**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-14-0000386**
**30-JAN-2015**
**08:01 AM**

NO. CAAP-14-0000386

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
PAUL J. BAILEY, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-CR. NO. 12-1-0237(4))

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Paul J. Bailey (**Bailey**) appeals from the Judgment; Conviction and Probation Sentence; Notice of Entry filed October 30, 2013 (**Judgment**) by the Family Court of the Second Circuit (**Family Court**).[1]

Bailey pled no contest to two counts of Assault in the Second Degree (Hawaii Revised Statutes (**HRS**) § 707-711 (Supp. 2013)), as part of a plea agreement with Plaintiff-Appellee State of Hawai'i (**State**). Bailey moved for a deferred acceptance of his no contest plea (**DANC**), which was denied. He was convicted and sentenced to five years of probation with additional Special Terms and Conditions (**Conditions**) that included, *inter alia*, one year of imprisonment.

Bailey raises three points of error on appeal: (1) he was provided ineffective assistance of counsel when the Deputy

---

[1] The Honorable Richard T. Bissen Jr. presided.

Public Defender assigned to Bailey's case, James Rouse (**Rouse**), failed to timely file a notice of appeal and thus, Bailey's current appeal should not be dismissed as untimely; (2) the Family Court abused its discretion by denying Bailey's motion for a DANC, sentencing Bailey to a year in jail, and denying his Hawai'i Rules of Penal Procedure (**HRPP**) Rule 35 motion to reconsider sentence; and (3) the Family Court abused its discretion when it imposed the conditions listed as J, K, L, M, N, and P in Bailey's Sentence.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Bailey's points of error as follows:

(1) The Family Court twice extended Bailey's time to file a notice of appeal, finally setting a deadline at thirty days after January 17, 2014, which, as calculated under Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 26(a), would be February 17, 2014. Although the time to file a notice of appeal in a criminal case ordinarily expires thirty days after entry of the judgment, a court may extend the time to file a notice of appeal but only up to an additional thirty days after the time to appeal has expired. HRAP Rule 4(b)(1), (5). Thus, the Family Court could only have permissibly extended Bailey's time to appeal to sixty days after the October 30, 2013 judgment. As Bailey's notice of appeal was filed on January 28, 2014, it was clearly untimely under HRAP Rule 4(b).

The Hawai'i Supreme Court has previously stated:

> As a general rule, compliance with the requirement of timely filing of a notice of appeal is jurisdictional, and we must dismiss an appeal on our motion if we lack jurisdiction. However, we have permitted belated appeals under certain circumstances, namely, when . . . defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction in the first instance.

State v. Knight, 80 Hawai'i 318, 323, 909 P.2d 1133, 1138 (1996) (citations, internal quotation marks, and brackets omitted). Both Bailey and the State agree that Rouse inexcusably failed to timely appeal Bailey's conviction and that this court should hear

the merits of Bailey's appeal in the interests of justice. Rouse himself admitted to "dropping the ball." We conclude that Rouse's failure to timely appeal was inexcusable and deprived Bailey of effective assistance of counsel; thus, we will decide Bailey's appeal on the merits.

(2) As a preliminary matter, we consider Bailey's eligibility for a DANC under Hawai'i law. HRS Chapter 853 establishes when and how a court may defer acceptance of a defendant's guilty or no contest plea under HRS § 853-1, but such deferrals "are constrained by HRS § 853-4, which sets out the circumstances under which chapter 853 'shall not apply.'" State v. Sakamoto, 101 Hawai'i 409, 412, 70 P.3d 635, 638 (2003). Bailey was initially charged with four counts of Sexual Assault in the Third Degree, an offense for which a DANC is expressly not available. HRS § 853-4(a)(13)(P) (Supp. 2013). ("This chapter shall not apply when . . . [t]he offense charged is . . . Sexual assault in the third degree[.]"). However, the charges were later changed to two counts of Assault in the Second Degree, to which Bailey pled no contest.

Assault in the Second Degree is defined in HRS § 707-711 and is a Class C felony. The record does not specify to which subsection of HRS § 707-711 Bailey pled no contest. However, subsections (1)(c) - (h) are clearly inapplicable to the facts in this case.[2] Thus, Bailey's no contest plea was made

---

[2]    HRS § 707-711 (Supp. 2013) provides, in relevant part:

§ 707-711 Assault in the second degree. (1) A person commits the offense of assault in the second degree if:

(a)    The person intentionally or knowingly causes substantial bodily injury to another;
(b)    The person recklessly causes serious or substantial bodily injury to another;
(c)    The person intentionally or knowingly causes bodily injury to a correctional worker . . .;
(d)    The person intentionally or knowingly causes bodily injury to another with a dangerous instrument;
(e)    The person intentionally or knowingly causes bodily injury to an educational worker . . .;
(f)    The person intentionally or knowingly causes bodily injury to any emergency medical services

(continued...)

pursuant to HRS § 707-711(1)(a) or (b). Under these subsections: "A person commits the offense of assault in the second degree if: (a) The person intentionally or knowingly causes substantial bodily injury to another; [or] (b) The person recklessly causes serious or substantial bodily injury to another[.]" HRS § 853-4(a)(2)(A) (Supp. 2013) provides that chapter 853 will not apply when the offense charged is "a felony that involves the intentional, knowing, or reckless bodily injury, substantial bodily injury, or serious bodily injury of another person[.]" Thus, chapter 853 does not apply and Bailey was not eligible for a DANC under HRS § 853-1.[3]

---

[2](...continued)

|  |  | provider . . . ; |
|---|---|---|
| (g) | | The person intentionally or knowingly causes bodily injury to a person employed at a state-operated or -contracted mental health facility. . . .; |
| (h) | | The person intentionally or knowingly causes bodily injury to a person who: |
| | (i) | The defendant has been restrained from, by order of any court, including an ex parte order, contacting, threatening, or physically abusing pursuant to chapter 586; or |
| | (ii) | Is being protected by a police officer ordering the defendant to leave the premises of that protected person pursuant to section 709-906(4), during the effective period of that order; or |
| (i) | | The person intentionally or knowingly causes bodily injury to any firefighter or water safety officer who is engaged in the performance of duty. . . . |

(2) Assault in the second degree is a class C felony.

[3]     We note that, in 2003, the Hawai'i Supreme Court held that an earlier version of HRS § 853-4 did not preclude a DANC plea in a Second Degree Assault case. Sakamoto, 101 Hawai'i at 412-13, 70 P.3d at 638-39. In Sakamoto, the defendant had been charged with Assault in the Second Degree for "intentionally or knowingly caus[ing] substantial bodily injury" to another. Id. at 410, 70 P.3d at 636. However, the version of HRS § 853-4 in effect at the time did not remove felonies which involved "substantial bodily injury" from the purview of chapter 853, only those which involved "serious bodily injury" or mere "bodily injury". Id. at 410, 412, 70 P.3d at 636, 638. The court held that because HRS § 853-4 did not foreclose felonies that involved "substantial bodily injury", "the plain and unambiguous language of the statute [did] not exclude the offense at issue in this case." Id. at 413, 70 P.3d at 639. Despite the State's argument that such an interpretation would lead to the absurd result that a defendant charged only with causing "bodily
(continued...)

4

We nevertheless conclude that the Family Court erred when it denied Bailey's request for no jail time based on his refusal to admit guilt.

As a preliminary matter, we reject the State's assertion that Bailey waived his privilege against self-incrimination when he pled no contest. See Mitchell v. U.S., 526 U.S. 314, 322-27 (1999) ("Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. . . . Any effort by the State to compel the defendant to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.") (citations, internal quotation marks, and brackets omitted); State v. Kamana'o, 103 Hawai'i 315, 320-21, 82 P.3d 401, 406-07 (2003).

In Kamana'o, the Hawai'i Supreme Court adopted the following three factor test from the Michigan Supreme Court to determine whether the sentencing court impermissibly relied on the defendant's refusal to admit guilt in imposing the enhanced sentence: "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that, had the defendant affirmatively admitted guilt, his sentence would not have been so severe." 103 Hawai'i at 323, 82 P.3d at 409 (quoting People v.

---

[3](...continued)
injury" would be foreclosed from a DANC, but a defendant who caused "substantial bodily injury" would not, the court held that it was bound by the language of the statute. Id. The court concluded by noting that "the legislature has had ample and numerous opportunities to amend the DAG [deferred acceptance of guilty plea]/DANC statute to exclude felony offenses that cause 'substantial bodily injury' from the possibility of deferral, but has failed to do so." Id. at 414, 70 P.3d at 640.

About a year after Sakamoto, HRS § 853-4 was amended to cover felonies involving "the intentional, knowing, or reckless bodily injury, substantial bodily injury, or serious bodily injury of another person". 2004 Haw. Sess. Laws, Reg. Sess., Act 85, at 340-341. The legislature made clear that the purpose of this change was to preclude the acceptance of DAG or DANC pleas for offenses involving substantial bodily injury. Conf. Comm. Rep. No 36-04, in 2004 Senate Journal, at 1017; S. Stand. Comm. Rep. No. 3093, in 2004 Senate Journal, at 1546; H. Stand. Comm. Rep. No. 200-04, in 2004 House Journal, at 1489.

With the addition of "substantial bodily injury" to the statute, HRS § 853-4(a)(2) now precludes a DANC plea from any charge of Second Degree Assault brought under HRS § 707-711(1)(a) or (b).

Wesley, 411 N.W.2d 159, 162 (Mich. 1987)) (brackets omitted). Notably, the Michigan case and the other cases relied on by the supreme court did not involve enhanced sentencing; rather they concluded that the defendant's refusal to admit guilt cannot be the sole reason for imposing a harsher sentence, such as incarceration versus probation. Id. at 321-23, 82 P.3d at 407-09. Thus, we conclude that the Kamana'o factors are applicable to this case.

The first factor articulated in Kamana'o is the defendant's maintenance of innocence after conviction. 103 Hawai'i at 323, 82 P.3d at 409. Although a no contest plea functions much like a guilty plea, "a defendant, by pleading guilty, admits to having unlawfully engaged in the charged criminal conduct, whereas, by pleading no contest, he or she neither admits to nor denies having done so, but rather chooses not to contest the charge to which the plea is entered." State v. Merino, 81 Hawai'i 198, 217, 915 P.2d 672, 691 (1996). Thus, Bailey did not admit guilt by entering his no contest plea. At sentencing, although "tak[ing] responsibility for the pain and suffering that [his] actions may have caused," Bailey maintained that he did not molest MD and only accidentally touched her breast.

As to the second factor, the Family Court did not attempt to get Bailey to admit guilt. The court's repeated references to Bailey's refusal to admit guilt or responsibility came after Bailey was allowed to speak and immediately before the court imposed the sentence.

However, with respect to the final factor, it appears from the record that Bailey's sentence would have been less severe had he admitted guilt. At the October 30, 2013 sentencing hearing, the court made the following statements:

> *You know, this sentencing in one way would have been easier to pronounce had you come clean.* On the other hand, by your insistence and excuses, which I find contradicted by the report and the statements given, not only by you and your daughter, but by all the statements made by her Mom and Mom's parents that night, as well as the statement provided by your wife, Michelle, *points to the fact that you are not accepting responsibility.*

> *And it's difficult for the Court to, first off, even consider you a deferred acceptance and your request for no jail based on the fact that you have not accepted responsibility.*

You say you have and you say you're sorry, but as I see this case, Mr. Bailey, I don't see that. I just don't see it.

. . . .

And instead of *coming clean* to vindicate her so that she does not leave a dispute, *you will, as they say, go down swinging.* You will stick to this explanation that somehow she made this up on the spur of the moment now, because she reported immediately to her Mom when she walked through the door. . . .

. . . .

> *You do not have an ounce of concern about your daughter, because you're not accepting the responsibility.*

You're saying the things you're saying because you hope it's going to convince somebody like me to give you an out. You don't deserve an out.

The Family Court clearly violated Kamanaʻo's admonition that, while a court may consider a defendant's lack of remorse in assessing the likelihood of successful rehabilitation, it may not infer a lack of remorse from a defendant's refusal to admit guilt. 103 Hawaiʻi at 321, 82 P.3d at 407. For instance, at the sentencing hearing, the court made the finding that "rehabilitation will be a challenge based on the defendant's current denial".[4] This conclusion is very similar to the sentencing court's improper inference in Kamanaʻo that "[defendant's] refusal to acknowledge his criminal behavior 'negate[d] any reasonable expectation of his rehabilitation[.]'" 103 Hawaiʻi at 324, 82 P.3d at 410. And, at the December 3, 2013 hearing on Summit's Motion to Withdraw as Counsel, the court made the following statements which also indicated that it inferred a lack of remorse and poor rehabilitative prospects from Bailey's refusal to admit guilt:

---

[4] The court's reasoning was likely influenced by the Sentencing Recommendation, which recommended sex offender treatment and incarceration because "the defendant continues to deny what he did and fails to acknowledge that he may have a problem, rehabilitation might be a challenge."

> *I found that your client was showing no remorse because he was blaming the victim. . . .* And that's why I found he did not deserve . . . the DANC. . . .
>
> . . . .
>
> So for him to come to my courtroom and stand in front of me and say that the daughter lied about all of this, why would I give a deferral to someone like that? *Now, if he came in here with his head in his hand and said, I'm sorry for the foolish mistake I made, I should never have done this to my daughter, I might have considered it.* But he wants it all. He wants his reputation and he wants to not go to jail and get a DANC.
>
> . . . .
>
> But the Court has to make the basis that he's unlikely to reoffend, *and for people to not reoffend, they have to be subject, open to rehabilitation. I think your client has a problem and it's an unadmitted and unaddressed problem.*
>
> Why would I give a DANC to that person? I don't know why anyone would. *He didn't come here apologizing for his wrongdoing.* He came here hoping to have this all go away.

And finally, during the February 19, 2014, hearing on the Motion to Reconsider Sentence, the court stated "I looked at everything else that has happened, including, at the time, his lack of remorse." Although these statements were made primarily in relation to the DANC request, it clearly appears that, had Bailey affirmatively admitted guilt, his sentence would not be so severe.

Weighing the Kamana'o factors, we conclude that in denying Bailey's request for no jail time and imposing a one year imprisonment condition as part of his probation, the Family Court was improperly influenced by Bailey's refusal to admit guilt.

(3) HRS § 706-624(2) (Supp. 2013) provides that the court may exercise its discretion in imposing certain conditions as part of a sentence of probation "to the extent that the conditions are reasonably related to the factors set forth in section 706-606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706-606(2)[.]" A court may not exercise its discretion to impose additional conditions pursuant to HRS § 706-624(2) without some factual basis in the record. State v. Kahawai, 103 Hawai'i 462, 462-63, 83 P.3d 725, 725-26 (2004).

Bailey contests the conditions of his probation listed as J, K, L, M, N, and P in the court's October 30, 2013 Judgment, arguing that these conditions are not supported by sufficient facts in the record and/or that they are not reasonably related to the factors in HRS § 706-606 (1993).

Condition J: Satisfactory participation in the Hawaii Sex Offender Treatment Program (**HSOTP**). In adopting this condition, the Family Court referenced State v. Solomon, 107 Hawai'i 117, 111 P.3d 12 (2005). Bailey argues that, unlike the defendant in Solomon, he did not plead guilty, he did not have a criminal record, and "[t]he record in this case is completely devoid of the types of information that the family court in Solomon had when it sentenced Solomon to complete the sex offender treatment program." Although the defendant in Solomon had a more extensive history of sexual misconduct than Bailey, notwithstanding the no contest plea to a non-sexual offense, Bailey's alleged conduct involved inappropriate touching of a minor, MD's statements were corroborated by others, and the court stated that it believed the incident occurred "exactly the way [MD] reported it, immediately." Thus, the imposition of the HSOTP condition had a rational basis in the facts in the record. State v. Kahawai, 103 Hawai'i 462, 467, 83 P.3d 725, 730 (2004). This is not a case where there is no evidence of a propensity towards improper sexual behavior, and thus, no basis for sex offender treatment. See State v. Holt, 116 Hawai'i 403, 421-22, 173 P.3d 550, 568-69 (Haw. App. 2007).

Further, the HSOTP condition was rationally related to the factors in HRS § 706-606, specifically, HRS § 706-606(2)(c) and (d), which relate to the need for the sentence imposed to protect the public from further crimes by the defendant and to provide the defendant with needed correctional treatment in the most effective manner. The court noted that it reflected on the HRS § 706-606 factors in imposing the HSOTP condition, that sex offender treatment was included in the Sentencing Recommendation, and that it believed Bailey had demonstrated the ability to commit sex offenses against a minor. Thus, it is clear that the

court meant for the HSOTP treatment to rehabilitate Bailey and keep him from reoffending.

Therefore, because Condition J was reasonably related to the HRS § 706-606 factors and based on facts in the record, we conclude that the Family Court did not abuse its discretion when it imposed this condition.

Condition K: Refraining from purchasing, possessing, or accessing inappropriate audio or visual materials. This condition is impermissibly vague as it fails to give Bailey adequate notice as to what types of conduct would be a violation of the terms of his probation. See, e.g., U.S. v. Guagliardo, 278 F.3d 868, 872 (9th Cir. 2002) ("A probationer . . . has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison.); State v. Martinez, 59 Haw. 366, 374, 580 P.2d 1282, 1287 (1978) ("The standard of specificity to be applied to the condition [of probation] under appellant's facial challenge is whether there are any conceivable circumstances to which the condition applies with sufficient clarity to give appellant fair warning that her conduct may be in violation."). There is no common understanding as to what kinds of audio or visual material are "inappropriate" and "[w]ithout further clarification, the term, 'inappropriate' is 'too vague to put [the probationer] on notice of what material is prohibited.'" U.S. v. Begay, 556 Fed. App'x. 581, 583 (9th Cir. 2014).[5] This vagueness cannot be cured by giving Bailey's therapist the authority to interpret the meaning of "inappropriate" because reasonable people could differ as to what "inappropriate" means,

---

[5]     We note that, in some cases, courts have upheld conditions which prohibit a probationer from possessing "sexually stimulating" or "sexually oriented" materials which are deemed inappropriate by probation officers/treatment providers. E.g., U.S. v. Hobbs, 710 F.3d 850, 855 (8th Cir. 2013) (A condition against possessing any "sexually stimulating or sexually oriented" material "deemed inappropriate by the U.S. Probation Officer in consultation with the treatment provider" was not unconstitutionally vague), U.S. v. Bee, 162 F.3d 1232, 1234-35 (9th Cir. 1998) (upholding a condition that probationer "not possess any sexually stimulating or sexually oriented material as deemed inappropriate by [his] probation officer and/or treatment staff").

and thus, the therapist "could well interpret the term more strictly than intended by the court or understood by [Bailey]." Guagliardo, 278 F.3d at 872. Further, because of the vagueness of the condition itself, we cannot determine whether it is otherwise reasonable. Id. Additionally, prohibiting Bailey from frequenting any place where he may access inappropriate material, including via the internet, could be interpreted to include book stores, libraries, or in fact anywhere he might have access to a computer, smartphone, or other device with internet access. Such an overly broad provision is not reasonably necessary to accomplish the purposes of HRS § 706-606(2), i.e., punishment, deterrence, protection of the public, or rehabilitation. U.S. v. Dog, 493 Fed. App'x. 898, 900 (9th Cir. 2012).

Condition L: Curfew, travel, and leisure time restrictions as imposed by the probation officer. Supervision by a probation officer in lieu of incarceration and restrictions on one's actions after release are essential aspects of the sentence of probation. State v. Fields, 67 Haw. 268, 277, 686 P.2d 1379, 1387 (1984). Condition L is therefore related to the need to provide just punishment for the offense. HRS § 706-606(2)(a). Additionally, two other conditions of Bailey's probation, as mandated by statute, were that he not commit another crime while on probation and that he remain within the jurisdiction of the court unless granted permission to leave by the court or his probation officer. Condition L is meant to ensure that Bailey complies with these mandatory terms of his probation. Accordingly, we conclude that the Family Court did not abuse its discretion in imposing Condition L.

Condition M: Restriction against hitchhiking or picking up hitchhikers. Bailey correctly notes that there are no allegations he committed a crime involving hitchhiking. We note, however, a California case involving a similar condition supports the proposition that the court did not abuse its discretion in imposing Condition M. In People v. Moses, 131 Cal. Rptr. 3d 106, 111 (Cal. Ct. App. 2011), a condition prohibiting hitchhiking or picking up hitchhikers was held reasonable as to a defendant who

was charged with committing a lewd or lascivious act upon a minor because "it is reasonable to restrict him from opportunities to be in a car alone with a minor; preventing defendant from hitchhiking or giving rides to hitchhikers furthers this goal." Similarly, given that Bailey was accused of sexually touching MD while alone with her in a car, it is reasonable to impose Condition M so as to limit his opportunities to be alone in a car with a minor. Thus, as this condition has a factual basis and is reasonably necessary for deterrence and the protection of the public (HRS § 706-606(2)(b), (c)), the court did not abuse its discretion by imposing it.

Condition N: Restriction against contacting, directly or indirectly, a minor or residing with a minor without permission of probation officer. Bailey argues that a restriction against contacting or residing with any minor child does not have a factual basis in the record because the allegations against him involve only his daughter. However, the record supports a restriction against unpermitted contact with minors in general, not just MD. First of all, the court recognized that Bailey's actions "demonstrated the . . . ability to commit sex offenses against a minor." Additionally, the presentence report indicated that "[t]he victim was particularly vulnerable, due to young or old age[.]" Similar prohibitions against contacting minors have been upheld against defendants who have viewed child pornography but were not charged with actually touching a child. U.S. v. Levering, 441 F.3d 566, 569-70 (8th Cir. 2006) (citing to a number of Eighth Circuit Court of Appeals cases where prohibitions against contacting minors were upheld against child pornography defendants). Here, Bailey was convicted of assaulting a minor, and thus his danger to minors is at least as severe as the danger posed by a child pornography defendant. Thus, there are sufficient facts in the record to support a finding that Condition N is reasonably necessary to protect members of the public, specifically, minor children, from further crimes by Bailey. HRS § 706-606(2)(c).

Condition P: Requirement that Bailey pay for and submit to electronic monitoring as deemed appropriate by his probation officer. Bailey contends that this condition has no factual basis because he "complied at all stages of the proceedings" and "has no prior history that would suggest that electronic monitoring may be necessary to gain [his] compliance with the terms of his probation." Like Condition L, Condition P is supported by the fact that Bailey has demonstrated the ability to sexually abuse a minor and is reasonably related to the need to provide just punishment for the offense, to deter criminal conduct, and to protect the public from further crimes by the defendant. HRS § 706-606(2)(a)-(c). Thus, imposing this condition was not an abuse of discretion.

For these reasons, we affirm the Family Court's denial of Bailey's motion for a DANC, vacate his sentence, and remand for resentencing before a different judge.

DATED: Honolulu, Hawaiʻi, January 30, 2015.

On the briefs:

Kirstin Hamman
for Defendant-Appellant

Peter A. Hanano
Deputy Prosecuting Attorney
County of Hawaiʻi
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge